UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
KONSTANTINOS KATSIGIANIS,                     :
                                              :
                    Plaintiff,                :
                                              :     **MEMORANDUM AND ORDER**
           -against-                          :     06-CV-6295 (DLI) (CLP)
                                              :
MICHAEL J. ASTRUE,[1]                         :
Commissioner of Social Security               :
                                              :
                    Defendant.                :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Konstantinos Katsigianis, filed an application for supplemental security income ("SSI") under the Social Security Act (the "Act") on March 4, 2004. Plaintiff's application was denied initially and on reconsideration. Plaintiff appeared with counsel and testified at a hearing held before an Administrative Law Judge ("ALJ") on March 8, 2006. By a decision dated April 28, 2006, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. On October 5, 2006, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff filed the instant action seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). The Commissioner now moves for judgment on the pleadings, pursuant to Rule 12 of the Federal Rules of Civil Procedure, seeking affirmation of the denial of benefits. Plaintiff cross-moves for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. For the reasons set forth more fully below, defendant's motion is granted in part and denied in part. The court finds that substantial evidence supports the ALJ's decision and that the

---

[1]   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue shall be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this action.

decision is free of legal error. However, plaintiff now is of "advanced age"[2] and, thus, may be entitled to benefits. Plaintiff's motion, accordingly, is granted in part in that this action is remanded for further proceedings on the sole issue of whether plaintiff, as a person of "advanced age," is now entitled to benefits.

## BACKGROUND

**A.    Non-Medical and Testimonial Evidence**

Plaintiff is a 56-year-old who attended school through the ninth grade. (A.R. 265.)[3] He testified that a heart condition requiring a bypass surgery limited his ability to work and "uncontrollable" blood pressure causes him to feel dizzy. (A.R. 56-57, 271.) In connection with these conditions, plaintiff alleges to suffer from fatigue, dizziness, shortness of breath, and chest pain. (A.R. 268, 271.) Further, he testified that he experienced chest pain daily, which prevented him from working. (A.R. 266, 268.) Plaintiff's employment history is limited. He worked at Pepsico and the Bulova Watch Company during the 1970s, and had no earnings from 1984 to 2001. (A.R. 14, 265, 268.) In his SSI application, he indicated that he was self-employed as a part-time taxi driver in 2002, earning $5,514.00 for the year. (A.R. 14, 52.) He has not worked since 2002 due to "lack of work." (A.R. 57.)

---

[2]    Under the Act, an individual 55 years of age or older is deemed to be of "advanced age." The Act provides a presumption of disability for individuals who are of advanced age and who suffer from severe impairments for one year or longer. *See Draegart v. Barnhart*, 311 F.3d 468, 472-77 (2d Cir. 2002) (reversing the denial of benefits to an individual of "advanced age"). "The rationale for that presumption is that a person of advanced age has little time to learn a new skill and apply it to a new job, especially if his [or her] ability to work has been limited by a medical disability." *Id*. at 475.

[3]    "A.R." refers to the administrative record of the proceedings below with respect to plaintiff's application.

### B.     Medical Evidence

On February 18, 2004, plaintiff was admitted to NYU Medical Center with chest pains and severe shortness of breath. (A.R. 102, 108.) He was diagnosed with severe unstable angina, severe triple vessel disease, hypertension, and hyperlipidemia and underwent a quadruple-vessel coronary artery bypass. (A.R. 98-100.) By February 27, 2004, plaintiff had stabilized, and was discharged home with prescriptions for Amiodarone, Digoxin, Lopressor-Metoprolol, Plavix, Lipitor, folic acid, and ferrous sulfate. (*Id.*) He was counseled on his diet and activity. (*Id.*) Plaintiff went to Bellevue Hospital Center for three follow-up visits. On March 19, 2004, he was described as "doing well." (A.R. 143-44, 146.)

There is no evidence of any further treatment until December 2005. On December 7, 2005, Dr. Constantine Kosmas evaluated plaintiff. (A.R. 191.) Plaintiff underwent a nuclear stress test, which "was terminated due to fatigue." *Id*. Dr. Kosmas noted that plaintiff had "a hypertensive blood pressure response to exercise," a "negative stress-EKG response," and no arrhythmia during the test. *Id*. An imaging study "demonstrate[d] mild to moderate infero-lateral basal ischemia." *Id*. Additionally, plaintiff underwent an echocardiogram, which indicated mild to moderate left ventricular hypertrophy, moderate left atrial, and mild right atrial enlargement, among other abnormalities. (A.R. 192.) On December 14, 2005, Dr. Papadakos Stylianos conducted a diagnostic procedure that revealed triple vessel coronary artery disease marked by stenosis in several arteries, and critical stenosis in the right coronary artery. (A.R. 206, 243.) He diagnosed plaintiff with mild to moderate systemic disease and inserted stents to increase blood flow to plaintiff's heart. (A.R. 206, 238.) Plaintiff was prescribed Zocor, Metoprolol, and Fosinopril. (A.R. 200.)

The next medical appointment on record is a May 17, 2006 visit to New York Hospital in Queens, at which time Dr. Stylianos conducted diagnostic procedures including cardiac catheterization, ventriculography, aortogram, and coronary angiography. (A.R. 258.) The procedures revealed stenosis at levels similar to those recorded in December 2005. Dr. Stylianos concluded that plaintiff had triple vessel disease, old occlusion, patent left internal mammary artery graft to left anterior descending artery, and saphenous vein graft to first diagonal branch. (A.R. 258.) Dr. Stylianos recommended "continued medical therapy and secondary prevention measures." *Id*. There is no indication what, if any, treatment or medical therapy plaintiff received after these diagnostic procedures.

**C.     Agency Consults**

The record contains a Physical Residual Functional Capacity Assessment completed by Daii A. Shteyngart, a Disability Determination Services ("DDS") physician. (A.R. 154-61.) It is unclear when this assessment took place. Dr. Shteyngart indicated that plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, and sit with normal breaks for approximately six hours in an eight-hour work day. *Id*. Dr. Shetyngart found plaintiff's statements regarding symptoms of chest pain, shortness of breath and inability to walk and stand for long periods of time "partially credible" based on an abnormal EKG. (A.R. 159.) Finally, Dr. Shteyngart noted that the treating source's statements regarding plaintiff's physical capacity were not "significantly different" from his findings. *Id*.

On June 25, 2004, Dr. E. B. Balinberg, a consultant for the Agency, evaluated plaintiff. (A.R. 162-84.) He noted that plaintiff took Zocor, Metorprolol, Enalapril, Diflucan, and, Tylenol for his symptoms. (A.R. 162.) He diagnosed plaintiff with "coronary artery disease, status post-

4

aorta coronary bypass graft surgery." (A.R. 163.) He found plaintiff's condition "chronic, possibly progressive" and noted that he had a "limited ability to do heavy physical activities like, lifting, carrying, pushing, pulling, heavy loads." (A.R. 164.) Plaintiff also underwent a treadmill stress test, administered by Dr. Soo Park, that revealed no evidence of ischemia, and that plaintiff's physical fitness was above average. (A.R. 165.) Further, Dr. A. S. Kape evaluated plaintiff's medical records upon request of the New York Office of Temporary and Disability Assistance, concluding that plaintiff was able to lift ten pounds frequently, lift twenty pounds occasionally, and walk and stand six hours in an eight-hour day. (A.R. 185.)

## DISCUSSION

### A. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring actions in federal courts seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). District courts, reviewing final determinations of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

District courts are empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). Remand is also appropriate when "there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

**B.     Disability Claims**

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of proof and must demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether claimants are disabled under the Act, as set forth in 20 C.F.R. § 404.1520. If at any step, an ALJ finds that a claimant is either disabled or not disabled, the inquiry ends there. First, claimants are not disabled if they

are working and performing "substantial gainful activity." 20 C.F.R. § 416.920. Second, ALJs consider whether claimants have severe impairments, without reference to age, education or work experience. To be considered disabled, claimants must have an impairment, or combination of impairments, that significantly limit their physical or mental ability to do basic work activities, satisfying the durational requirement in § 404.1509. *See* 20 C.F.R § 416.920(c). Third, ALJs will find claimants disabled if their impairments meet or equal one of the impairments listed in Appendix 1.[4] 20 C.F.R. § 416.920(d).

When claimants do not have listed impairments, ALJs then make findings as to their "residual functional capacity" in steps four and five. 20 C.F.R. § 416.920(e). In the fourth step, claimants are not found disabled if they are able to perform "past relevant work." 20 C.F.R. § 416.920(f). Finally, in the fifth step, ALJs determine whether claimants can adjust to other work that exists in the national economy, considering factors such as age, education, and work experience. If so, claimants are not disabled. 20 C.F.R. § 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

**C.    ALJ's Decision**

The ALJ considered the medical evidence and testimony set forth above in rendering his opinion. The ALJ resolved step one in plaintiff's favor, finding that plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ gave him the benefit of the doubt notwithstanding indications that he may have worked "off the books" in 2004. (A.R. 14-15.) At step two, the ALJ found that plaintiff suffered from several severe impairments, including coronary artery disease, status-post cardiac catheterization and four-vessel bypass

---

[4]    20 C.F.R. pt. 404, subpt. P, app. 1.

surgery, and hypertension. (A.R. 15.) At step three, the ALJ found that these severe impairments did not alone, or in combination, meet or equal one of the listed impairments in Appendix 1. (A.R. 17.) At step four, the ALJ found that claimant had the residual functional capacity "to perform . . . the full range of light work."[5] (A.R. 21.) Regarding plaintiff's subjective complaints, the ALJ found plaintiff "credible to the extent that he would experience chest pain with heavy lifting or prolonged periods of walking and/or standing"; however, the ALJ found plaintiff's "statements concerning the intensity, duration and limiting effects of [his] symptoms [ ] not entirely credible." (A.R. 18.) The ALJ cited "significant inconsistencies" in the record as the basis for these credibility findings. (A.R. 17.) At step five, the ALJ concluded that plaintiff was "not disabled," and that, "jobs [ ] exist in significant numbers in the national economy that the claimant can perform." (A.R. 20.) The ALJ noted that plaintiff had no vocationally relevant past work other than his work as a taxi-driver, and that plaintiff was a person "closely approaching advanced age," who had limited education and ability to communicate in English and no transferable job skills. (A.R. 20.)

**D. Application**

The Commissioner contends that the ALJ properly denied benefits on the grounds that: (i) plaintiff did not demonstrate a listed impairment or one of equal severity, (ii) plaintiff retained the residual functional capacity to perform light work, and (iii) corresponding employment opportunities existed. Plaintiff contends that he is entitled to a reversal on the grounds that his medical impairments are equal to a listed impairment and that the ALJ's findings are unsupported by substantial evidence. Alternatively, plaintiff seeks remand for a calculation of

---

[5] Light work involves lifting and carrying objects weighing up to twenty pounds, standing, walking and sitting up to six hours in an eight-hour workday, and pushing and pulling arm and leg controls. *See* 20 C.F.R. § 416.967(b).

8

benefits as plaintiff is now a person of "advanced age," who would be considered disabled under Medical-Vocational Rule 202.01. (Pl. Mem. 7.)

### 1. Listed Impairments

In the instant case, there is nothing in the record to suggest that plaintiff suffers from any listed heart conditions other than, possibly, ischemic heart disease. A claimant meets the listing for ischemic heart disease when the claimant demonstrates angina (*Id.* at § 4.00(E)(3)) or an anginal equivalent (*Id.* at § 4.00(E)(5)) due to myocardial ischemia, while on a regimen of prescribed treatment *and* meets the criteria set forth in subsections A, B, or C. *See* 20 C.F.R., pt. 404, subpt. P, app. 1 § 4.04. Subsections A and B are relevant to the instant action.[6] Subsection A is met when diagnostic results meet one of the criteria described in subsections 1-4,[7] at a workload equivalent to 5 METS[8] or less. *Id.* at § 4.04(A). Subsection B is met by evidence of "[t]hree separate ischemic episodes, each requiring revascularization or not amenable to revascularization [ ], within a consecutive 12-month period." *Id.* at § 4.04(B).

---

[6] Subsection C is not applicable to plaintiff's case because it only applies to claimants for whom exercise testing presents a significant safety risk and there is no timely exercise treadmill test ("ETT") or timely drug-induced stress test available. 20 C.F.R. pt. 494, subpt. P, app. 1 § 4.00(E)(9)(g). There is no evidence suggesting that plaintiff fell within this high-risk category.

[7] The requirements of Subsection A are as follows: (1) Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least -0.10 millivolts (-1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than aVR, and depression of at least -0.10 millivolts lasting for at least 1 minute of recovery; or (2) At least 0.1 millivolt (1 mm) ST elevation above resting baseline in non-infarct leads during both exercise and 1 or more minutes of recovery; or (3) Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or (4) Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.

[8] METS is a measure of maximal aerobic capacity. 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.00(C)(3)(a).

Plaintiff established the first prong of ischemic heart disease as he suffers from angina; however, plaintiff cannot establish any of the additional criteria for this listing. There is no evidence of plaintiff exhibiting any of the manifestations outlined in Subsection A, at a workload equivalent to 5 METS or less. *Id*. at § 4.04(A). In fact, plaintiff reached a metabolic load of 10.1 METS during the nuclear stress test conducted by Dr. Kosmas in December 2005. (A.R. 191.) Further, there is no documentation to support the Subsection B requirements; *i.e.*, evidence of three ischemic episodes of the severity described therein, within a consecutive twelve-month period. *Id.* at § 4.04(B). Thus, substantial medical evidence supports the ALJ's decision finding that plaintiff does not suffer from a listed impairment.

2.  **Impairments Equal to a Listed Impairment**

The ALJ noted that nothing in the record "mentioned clinical findings equivalent in severity to the criteria of any listed impairment." (A.R. 17.) After undergoing bypass surgery, plaintiff denied chest pain and was assessed as stable during each of three follow-up visits in March 2004. (A.R. 143-46.) In June 2004, Dr. Balinberg made no findings to support plaintiff's asserted level of disability. (A.R. 163.) Further, Dr. Park found no evidence of ischemia, normal blood pressure and heart rate post exercise, and that plaintiff's physical fitness condition was "above average." (A.R. 165.) In December 2005, plaintiff was diagnosed with Class III unstable angina and had two stents placed in his right coronary arteries. (A.R. 241.) His diagnosis was mild to moderate systemic disease and the procedure was considered a success. (A.R. 206, 238.) Plaintiff did not seek medical attention again until May 2006, at which time, despite being diagnosed with Class IV unstable angina, his levels of stenosis remained virtually unchanged. (A.R. 258.) Based on the foregoing, the court finds that the Commissioner's determination that

plaintiff's combination of impairments was not equal to a listed impairment is supported by substantial evidence.

### 3. Plaintiff's Statements and Testimony Regarding His Condition

A claimant's statements regarding symptoms and limitations must be considered in addition to medical evidence as "symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 416.929(c)(4). "The extent to which an individual's statements about symptoms can be relied upon as probative evidence . . . depends on the credibility of the statements." *See* 20 C.F.R. § 416.929(d)(4). After reviewing all the evidence, "the adjudicator may find all, only some, or none of the individual's allegations to be credible," or find statements "credible [only] to a certain degree." *Id*. A claimant's work history may serve as probative evidence of his or her credibility. *See Schaal v. Apfel*, 134 F.3d 496, 502-503 (2d Cir. 1998) ("An ALJ should explore a claimant's poor work history to determine whether her absence from the workplace cannot be explained adequately (making appropriate a negative inference), or whether her absence is consistent with her claim of disability."); *see also* 20 C.F.R. § 416.929(c)(3). In any event, "allegations of pain or other symptoms" will not "raise the severity of a claimant's impairment(s) to that of a listed impairment" when key signs or laboratory findings are missing or deficient. 20 C.F.R. § 416.929(d)(3).

In the instant action, the ALJ found some, but not all of plaintiff's subjective complaints credible. The ALJ found plaintiff's "statements concerning the intensity, duration, and limiting effects of these symptoms not entirely credible" due to significant consistencies in the record as a

whole. (A.R. 17-18.) There is ample support in the record for these findings.[9] Diagnostic test results contradicted plaintiff's testimony that he suffered from "uncontrollable hypertension." (A.R. 142-53, 162, 165, 270-71.) Plaintiff only sought medical treatment twice after his bypass and did not heed repeated instructions to follow up with treating physicians. (A.R. 143, 163, 191, 210, 241, 258.) Moreover, plaintiff's work history does not bolster his credibility. Plaintiff claimed he worked in the 1970s, and not again until 2002 as a part-time taxi-driver. (A.R. 52, 265, 268.) He made no effort to explain this large gap in his employment history or how he provided for himself during this period. His description of the hours worked varies. He reported that he worked three hours a day on a part-time basis in his Work History Report. (A.R. 53.) Later, in his Disability Form, he stated that he worked five hours a day, four days a week. (A.R. 57.) Finally, plaintiff repeatedly asserted that he stopped working as a part-time taxi driver in October 2002. (A.R. 14, 52.) Yet, in 2004, he told both treating and agency physicians that he drove a New York City yellow cab. (A.R. 14-15, 108.) The Court finds the ALJ's findings regarding plaintiff's credibility supported by substantial evidence.

4.   **Residual Functional Capacity**

Residual functional capacity is the most that a person can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). None of plaintiff's treating physicians addressed his work ability or restrictions. In June 2004, Dr. Balinberg, an agency physician, noted that plaintiff had "[n]o difficulty transferring from a seated position on and off the examining table," had "[f]ull use of both hands and arms in dressing and undressing," and a full range of motion in his spine and joints. (A.R. 163.) He concluded that plaintiff had a "limited ability to do heavy

---

[9]   Plaintiff suggests that, to the extent that there are inconsistencies in the record, they may be due to the fact that someone else may have filled out the Work History and Function Reports on plaintiff's behalf. This fact is irrelevant. Plaintiff signed both of these reports and was responsible for confirming their veracity. *See* 20 C.F.R. § 416.310.

12

physical activities like, lifting, carrying, pushing, [and] pulling heavy loads." (A.R. 164.) Dr. Kape, another agency physician, opined that plaintiff could lift ten pounds frequently, twenty pounds occasionally, and walk and stand six hours in an eight-hour day (A.R. 185.) These capabilities meet the definition of light work. 20 C.F.R. § 416.967(b). Additionally, as pointed out by the ALJ, after cardiac catheterization and stent placement in December 2005, Dr. Kosmas advised plaintiff "to resume normal activity in one week; but no heavy lifting for one week." (A.R. 238.) Substantial evidence supports the ALJ's finding that plaintiff retained the residual functional capacity to perform light work.

### 5. Duty to Develop the Record

"The ALJ generally has an affirmative obligation to develop the administrative record." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). ALJs must "inquire fully into the matters at issue and . . . receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters." 20 C.F.R. § 702.338; *see also* 20 C.F.R. § 416.912(d)-(f). "This duty exists even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). In this case, the ALJ asked pertinent questions throughout the hearing and accepted additional evidence after the hearing. (A.R. 12.) To the extent that any additional information regarding plaintiff's condition may have been sought from plaintiff's treating physicians, it "would have entailed retrospective medical assessments [and] there was nothing presented at the hearing to indicate that retrospective assessments would have revealed any useful information or that the physicians were prepared to undertake such assessments" as none of them examined or treated plaintiff on an ongoing basis. *Perez*, 77 F.3d at 48 (holding that ALJ's conclusions were supported by substantial evidence and that ALJ satisfied his duty to develop the record.) Before the hearing, all efforts were made to obtain plaintiff's medical

records and consulting medical opinions to supplement those records. (A.R. 154-64; 185). The ALJ had before him all the relevant medical evidence available and the evidence received "was adequate for him to make a determination as to disability." *Perez*, 77 F.3d at 48. On these facts, the court finds that the ALJ satisfied his duty to develop the record.

6. **Evidence Submitted to the Appeals Council Does Not Contradict the ALJ's Findings**

Under the Act, a claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez*, 77 F.3d at 44. "If the new evidence relates to a period before the ALJ's decision, the Appeals Council shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id*. After the hearing, plaintiff submitted the results of diagnostic procedures performed by Dr. Stylianos on May 17, 2006. (A.R. 258). The results indicated that plaintiff was diagnosed with Class IV unstable angina, which is not a listed impairment. This diagnosis on its own does not support finding of an impairment equal to a listed impairment. *See* 20 C.F.R. § 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis.") Further, the results reveal stenosis levels similar to those observed in December 2005. (A.R. 259.) Moreover, the evidence does not indicate that plaintiff stayed in the hospital, nor that any treatment, emergency or otherwise, was administered following this evaluation. (A.R. 258-260.) Based on the foregoing, it appears that the Commissioner's decision to deny review upon consideration of the new evidence is not supported by substantial evidence in the record.

**E.     Remand**

Remand for a calculation of benefits is appropriate when the record "provides persuasive proof of disability" and "further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  Plaintiff contends that, if affirmed, the instant action should be remanded for a calculation of benefits from the date he became of advanced age, March 16, 2007.  Plaintiff is correct that, upon reaching advanced age he would be considered disabled under Medical-Vocational Rule 202.01 at the RFC the ALJ found (s*ee* 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.01).  However, it is "possible that [his] physical condition has improved or that [he] has engaged in gainful employment following the decision of the ALJ and therefore would not qualify as disabled even though" he has now reached advanced age. *Cabrera v. Astrue*, 06-CV-9918 (JCF), 2008 WL 144697, *1 (S.D.N.Y. Jan. 16, 2008).

The case is remanded due to plaintiff's advanced age to determine whether plaintiff's condition has improved and whether he has engaged in any gainful employment since the final decision of the Commissioner.  If plaintiff's condition and employment have not changed, the Commissioner is directed to calculate benefits from March 16, 2007 to the present.  *See Cabrera v. Astrue*, 06-CV-9918 (JCF), 2007 WL 2706276, *11-12 (S.D.N.Y. Sept. 18, 2007); *Samuels v. Barnhart*, 01-CV-3661 (MBM), 2003 WL 21108321, *14 (S.D.N.Y. May 14, 2003).  The Commissioner shall take all steps necessary to prevent any undue delay in the processing of Plaintiff's case and in conducting further proceedings before the ALJ.  *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004).

## CONCLUSION

For the reasons set forth above, the defendant's motion for judgment on the pleadings is granted in part and denied in part. Plaintiff's motion is granted only to the extent that the case is remanded on the issue of plaintiff's disability status from March 16, 2007 to the present.

SO ORDERED

DATED:   Brooklyn, New York
         March 19, 2009

                                       _____/s/_____
                                           DORA L. IRIZARRY
                                         United States District Judge